IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LUCIOUS BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:21-CV-00590-RAH |
| | ) | [WO] |
| ROANOKE REHABILITATION | ) | |
| & HEALTHCARE CENTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

### I.  INTRODUCTION

The COVID-19 pandemic has ushered in a new wave of legal issues, not the least of which relate to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* This case presents one such issue at the intersection of COVID-19 and the ADA. The question here is one several courts in this Circuit have recently confronted: whether COVID-19 can be a disability under the ADA, and if so, has the plaintiff sufficiently pled a COVID-19 related disability?

In the summer of 2020, during the early days of the pandemic, Plaintiff Lucious Brown was terminated for failing to report to work while she was in the 13th day of her 14-day COVID-19 isolation and while she continued to suffer from

1

severe weakness, fatigue, brain fog, high blood pressure, cough, difficulty breathing, fever, and swollen eyes, all of which she alleges were caused by COVID-19. Brown subsequently filed this suit against her employers, Roanoke Rehabilitation & Healthcare Center (Roanoke Rehab) and Ball Healthcare Services, Inc. (Ball Healthcare), for violations of the ADA, race discrimination under 42 U.S.C. § 1981, and the tort of outrage under Alabama law.

Pending before the Court is the Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 16), which seeks dismissal of Brown's ADA claim. Upon reviewing the Amended Complaint and the parties' respective submissions on the Motion, the Court concludes that the Motion is due to be DENIED.

## II.   BACKGROUND

From September 16, 2019 to July 13, 2020, Brown was employed as a certified nursing assistant for the Defendants. (Doc. 12 at 3.)

On June 29, 2020, Brown went to her physician to be tested for COVID-19 because she was suffering from "severe weakness, fatigue, brain fog, high blood pressure, cough, difficulty breathing, fever, and swollen eyes." (*Id.* at 3.)  While she awaited her test results, her physician directed her to self-isolate. (*Id.*)  Two days later, on July 1, 2020, Brown's test results came back positive for COVID-19. (*Id.*)  Brown provided the physician's instructions and her positive COVID-19 test result to the Defendants. (*Id.* at 3–4.)

At the time, the Defendants maintained a policy that required a 14-day isolation period for any employee who tested positive for COVID-19. (*Id.* at 4.) This policy was consistent with then-CDC guidelines which also suggested a 14-day isolation period. (*Id.* at 5.) With the July 1 positive test, in compliance with the Defendants' policy and the CDC guidelines, Brown was to isolate until July 14, 2020.

Despite this, Brown's supervisor, Rebecca Farr, called Brown on July 7, 2020—seven days into Brown's 14-day isolation—and instructed her to report to work to be tested again for COVID-19. (*Id.* at 4.) Brown responded that she was still under isolation, per her physician's instructions, and that she continued to experience the same severe symptoms. (*Id.*) Although not clear from the Amended Complaint, Brown apparently remained in isolation, refusing to report to work to take the COVID-19 test.

On July 10, 2020, Farr contacted Brown again and repeated the instruction that Brown was to report to work to take a COVID-19 test. (*Id.*) Once again, Brown told Farr that she was still suffering from COVID-19 symptoms. (*Id.* at 5.) And again, Brown remained in isolation and did not report to work to take the COVID-19 test.

The following day, Farr contacted Brown for a third time. This time, Farr informed Brown that if she did not return to work on July 13, 2020, the Defendants would consider Brown "as having voluntarily quit." (*Id.*)

Despite Farr's third and final instruction to return to work, Brown did not return to work on July 13, 2020 because, as she alleges, she still suffered from "severe weakness, fatigue, brain fog, high blood pressure, cough, difficulty breathing, fever, and swollen eyes." (*Id.*) Brown was terminated that day, the 13th day of her 14-day isolation period. (*Id.*)

The day after her termination, because she continued to suffer from the same symptoms, Brown's physician re-tested her for COVID-19. (*Id.*) Brown once again tested positive. (*Id.*) She then filed this suit on September 3, 2021.

### III.   STANDARD OF REVIEW

Because the Motion is filed pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts Brown's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the operative complaint in Brown's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of the pleadings, the Court is guided by a two-prong approach: (1) the Court is not bound to accept conclusory statements of the elements of a cause of action and (2) where there are well-pleaded factual allegations, the Court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See*

*Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

## IV.  DISCUSSION

The Defendants' Motion seeks dismissal of Brown's ADA claim. In this claim, Brown alleges that she suffered from a disability, or was regarded as disabled due to having a severe case of COVID-19; that she requested a reasonable accommodation in that she be granted temporary leave due to her positive COVID-19 test and associated symptoms; that her request for accommodation was denied; and that she was terminated following her third refusal to return to work despite still experiencing symptoms and following an isolation protocol. (Doc. 12 at 6–9.)

To sufficiently plead a prima facie case of discrimination under the ADA, Brown must allege (1) that she has a disability, (2) that she was qualified for the job, and (3) that her employer is a covered entity and discriminated against her because

of the disability. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam); *Reed v. Heil Co.,* 206 F.3d 1055, 1061 (11th Cir. 2000).

Only the first element of Brown's prima facie case, whether she was disabled or regarded as disabled within the meaning of the ADA, is contested here. As the Defendants couch it, "a positive Covid-19 test and the symptoms Brown alleges are not sufficient to show that she was disabled under the meaning of the ADA, or that she was regarded as disabled."  (Doc. 16 at 3.)

The ADA defines "disability" as either (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The ADA directs courts to construe "disability" in "favor of broad coverage of individuals" to the "maximum extent permitted by the terms" of the statute. 42 U.S.C. § 12102(4)(A). Accordingly, courts have noted that the bar to be considered "disabled" under the ADA is not a high one. *See, e.g.*, *Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 & n.2 (11th Cir. 2014) (explaining that Congress instructed that "the establishment of coverage under the ADA should not be overly complex nor difficult").

Here, Brown argues that she has sufficiently pled the first and third definitions of "disability;" that she had an actual disability and that her employer regarded her

as having a disability. On both accounts, Brown's pleadings sufficiently allege a claim that plausibly entitles her to relief.

### 1. Actual Disability

Brown first alleges that she had an actual disability under the ADA. Brown alleges that she told the Defendants that she was COVID-19 positive, that she suffered from severe weakness, fatigue, brain fog, high blood pressure, cough, difficulty breathing, fever, and swollen eyes, and that CDC-guidance and company policy required that she isolate for 14 days.

To have an actual disability under the ADA, an individual must have "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, *breathing*, learning, reading, *concentrating*, *thinking*, communicating, and *working*." 42 U.S.C. § 12102(2)(A) (emphasis added).

While the Defendants argue that Brown failed to allege how her COVID-19 symptoms "affected a 'major life activity,'" and therefore has not sufficiently plead an actual disability, (Doc. 16 at 5), the Court concludes that Brown has presented sufficient facts to allege that she had physical or mental impairments from COVID-19 and that those impairments substantially limited recognized major life activities.

To begin, recent guidance by the Department of Health and Human Services and Department of Justice indicates that certain forms of COVID-19 may be considered a disability under the ADA. *See Guidance on "Long COVID" as a Disability under the ADA, Section 504, and Section 1557*, DEP'T OF HEALTH & HUM. SERVS. & DEP'T OF JUSTICE (July 26, 2021), https://www.ada.gov/long_covid_joint_guidance.pdf. As this guidance details, COVID-19 "is a physiological condition affecting one or more body systems." *Id.* at 3. Accordingly, COVID-19 may be a "physical or mental impairment under the ADA." *Id.* Additionally, the guidance states that certain forms of COVID-19 can "substantially limit major life activity," such as one's respiratory function, gastrointestinal function, and brain function, even months after first being infected. *Id.* at 4.

The EEOC also recently issued guidance as to whether COVID-19 can qualify as an actual disability in the context of Title I of the ADA. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, U.S EQUAL EMP. OPPORTUNITY COMM'N (Dec. 14, 2021), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. The EEOC guides that COVID-19 can be a disability but is not always a disability. *Id.* at N.3. For example, "asymptomatic" persons or persons with "mild symptoms" will not have an actual disability under

8

the ADA, but persons with "sufficiently severe" impairments from COVID-19 may be covered even if those impairments are not "long-term." *Id.* at N.2. In short, though neither determinative nor binding on this Court, this guidance is helpful in deciding the issue of whether COVID-19 can be a disability; and it guides that COVID-19 can be a disability, so long as the condition is sufficiently severe to impair major life activities.

Here, Brown gives specificity to her particular COVID-19 condition at the time of her termination. Her symptoms included severe weakness, fatigue, brain fog, high blood pressure, cough, difficulty breathing, fever, and swollen eyes. These symptoms could substantially limit major life activities, such as caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. And while the Defendants argue that the Amended Complaint is devoid of any allegations about how her symptoms affected a major life activity, the Amended Complaint makes clear that these symptoms impacted her ability to breath, concentrate, and work, all of which are statutorily recognized major life activities.

The Defendants point to two decisions of other courts as persuasive authority that a termination of an employee with a COVID-19 infection cannot form the basis of an ADA disability discrimination claim. *See Champion v. Mannington Mills, Inc.*,

No. 5:21-cv-00012-TES, 2021 WL 2212067 (M.D. Ga. May 10, 2021) (finding that a plaintiff must allege specific symptoms caused by COVID-19 that shows how a major life activity was substantially impaired); *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670 (E.D. Penn. 2021).

Both cases are easily distinguishable from the allegations here for the simple reason that the plaintiffs failed to allege any symptoms attributable to their COVID-19 diagnosis. Those facts are different from the factual assertions here where Brown specifically alleges that she suffered from many serious COVID-19-related symptoms. For example, Brown alleges that she suffered from severe weakness, difficulty breathing, and brain fog, all of which could substantially limit major life activities like breathing, concentrating, thinking, communicating, performing manual tasks, and working. 42 U.S.C. § 12102(2)(A). Indeed, given the specificity of Brown's allegations of COVID-19 symptoms, it appears that Brown's Amended Complaint would have sufficiently alleged an actual disability under Defendants' cited authority. *See Champion,* 2021 WL 2212067, at 1348 (finding that an "intricate" description of a plaintiff's COVID-19 symptoms is more specificity than is needed to adequately plead an actual disability under the ADA); *Payne*, 520 F. Supp. 3d at 679 (dismissing case because plaintiff did not plead *any* facts relating to symptoms or how those symptoms limited a major life activity).

The Court concludes that Brown has sufficiently alleged that she had an actual

disability under the broad construction of that term required by the ADA. While the Court notes the many arguments advanced by the Defendants concerning the non-severe, short-term conditions typically associated with COVID-19, and further notes that Brown's own respective bout with COVID-19 ultimately may fall into that characterization, these assertions are better advanced by the Defendants and addressed by the Court at the summary judgment stage where Brown's allegations can be subjected to a more demanding evidentiary standard than the assumption-of-truth standard applicable here. In other words, while Brown may win the battle at this stage, she could ultimately lose the war at the summary judgment stage.

### 2. Regarded as Having a Disability

In Count I, Brown also alleges that she "has been regarded as disabled by the Defendant." (Doc. 12 at 6.) The Defendants likewise move to dismiss this aspect of her ADA claim, asserting that Brown cannot show that "she was *regarded as* disabled merely from her COVID-19 diagnosis, which . . . has an expected duration of six months or less." (Doc. 16 at 6.) The Defendants' primary argument is that COVID-19 is a transitory and minor impairment, so the Defendants could not have perceived Brown as disabled within the meaning of the ADA. Brown responds that the Defendants' arguments present facts outside the four corners of the Amended Complaint and are more appropriate for consideration at the summary judgment stage. (Doc. 20 at 5.)

As a threshold matter, the Defendants argue that Brown's "regarded as" theory fails because Brown alleges an accommodation claim. This point is well-taken. "An accommodation claim requires an actual disability, 'there is no requirement to provide reasonable accommodations where an employee is only regarded as disabled.'" *Rice v. Guardian Asset Mgmt., Inc.,* No. 3:21-CV-00693-AKK, 2021 WL 4354183, at *2 (N.D. Ala. Aug. 19, 2021) (quoting *Billups v. Emerald Coast Utils. Auth.*, 714 F. App'x 929, 936 n.4 (11th Cir. 2017) (citing 42 U.S.C. § 12201(h))). Therefore, to the extent that Brown brings an accommodation claim under the "regarded as" definition of disability, that claim is due to be dismissed. *Id*.

However, Brown's Amended Complaint also indicates a discharge claim, *i.e.*, that she was terminated because the Defendants perceived her as having a disability. (Doc. 12 at 9.) And unlike accommodation claims, discriminatory discharge claims can be based on an employer's perception that an employee has a disability. 42 U.S.C. § 12201(h); *Dulaney v. Miami-Dade Cty.*, 481 F. App'x 486, 489 (11th Cir. 2012). Therefore, to the extent that Brown alleges a discriminatory discharge claim based on a perceived disability, the claim will proceed as discussed below.

Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when she is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity. 42 U.S.C. § 12102(3)(A). An individual cannot be "regarded as having

12

such an impairment," however, if the impairment is "transitory and minor." *Id.* § 12102(3)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* Thus, "an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." *EEOC v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019). "Importantly, what matters for the 'regarded as' theory is whether the [employer] perceived [the plaintiff] as impaired, not whether he was actually impaired." *Forsyth v. Univ. of Alabama, Bd. of Trustees,* No. 20-12513, 2021 WL 4075728, at *4 (11th Cir. Sept. 8, 2021). This "more liberal standard" makes "it significantly easier for a plaintiff to show disability." *Coker v. Enhanced Senior Living, Inc.*, 897 F.Supp.2d 1366, 1374 (N.D. Ga. 2012).

The Defendants contend that Brown could not be regarded as having a disability because COVID-19 has an "expected duration of six months of less," making it an uncovered "transitory and minor" impairment. (Doc. 16.) This argument implicates several issues.

First, many lower courts have found that the "transitory and minor" exception is a defense for which a defendant bears the burden of establishing, rather than an element of a plaintiff's pleading requirement. *See, e.g., Booth v. GTE Federal Credit Union,* No. 8:21-CV-1509-KKM-JSS, 2021 WL 5416690, at *6 (M.D. Fla. Nov. 20, 2021) (collecting cases). This means that Brown is not required to plead facts

13

plausibly suggesting that the transitory and minor defense fails. And it also means that Brown's claim may only be dismissed if it is apparent from the face of the Amended Complaint that her COVID-19 case was transitory and minor. *See Green v. ADCO Int'l Plastics Corp.*, No. 1:17-CV-337-WSD-LTW, 2017 WL 8810690, at *10 (N.D. Ga. Dec. 27, 2017), *report and recommendation adopted,* No. 1:17-CV-337-WSD-LTW, 2018 WL 739794 (N.D. Ga. Feb. 7, 2018). Brown's allegations of "severe" symptoms certainly do not make it apparent that her COVID-19 case was either transitory or minor. (Doc. 12 at 8.)

Second, the Defendants' argument solely attacks the "transitory" aspect of the "transitory and minor" exception, ignoring the "minor" component. *See Booth*, 2021 WL 5416690 at *5 (discussing how the "transitory and minor" exception requires that an impairment be both "transitory" and "minor" in accordance with the plain meaning of the word "and"). "Transitory" impairments are ones with a duration of six months or less, but an impairment's severity "is an objective—and factual— inquiry." *Id.* And here, Brown alleges that she told the Defendants that she was suffering from a severe and symptom-laden case of COVID-19—sufficient allegations that her impairments were not minor.

Third, and ultimately, the Court agrees with Brown that the Defendants' arguments are better addressed at the summary judgment stage when a developed record is presented to the Court as it concerns Brown's COVID-19 symptoms and

her employer's perception thereof. After all, "whether an impairment is 'transitory and minor' is a quintessential question of fact that courts usually do not address at the pleading stage." *Booth*, 2021 WL 5416690, at *5; *see also Lisby v. Tarkett Ala., Inc.*, No. 3:16-cv-01835, 2020 WL 1536386, at *5 (N.D. Ala. Mar. 31, 2020) (using expert testimony to evaluate whether a jury could conclude that an impairment was "transitory and minor" at summary judgment); *Mayorga v. Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, at *9, n.2 (S.D. Fla. July 25, 2012) (collecting cases and observing that whether an impairment is minor is not usually decided before summary judgment); *Henson v. City of Atlanta*, No. 1:17-cv-3024, 2019 WL 12426046, at *11 (N.D. Ga. June 18, 2019) (denying summary judgment because, "[v]iewing the facts in the light most favorable to [plaintiff], there is at least some evidence from which a reasonable jury could conclude that [defendant] perceived [him] to be impaired").

Indeed, the Defendants' assertions about COVID-19 and its associated symptoms being short-term and non-severe may ultimately prove true in Brown's case,[1] but those assertions are not allegations contained in the Amended Complaint

---

[1] The reason for further factual development is clear. The physical impacts of COVID-19 differ from person to person. Indeed, while many individuals diagnosed with COVID-19 may suffer from no symptoms at all or only minor symptoms on a short-term basis, other individuals have been noted to suffer from extremely severe symptoms that have required months-long hospitalization and, in many cases, have resulted in death. Further, a term of art has recently circulated for long-term sufferers of COVID-19—"long-haulers." *See Guidance on "Long COVID" as a Disability under the ADA, Section 504, and Section 1557*, DEP'T OF HEALTH & HUM. SERVS. & DEP'T OF JUSTICE (July 26, 2021), https://www.hhs.gov/civil-rights/for-providers/civil-

and this Court cannot dismiss Brown's claims on that basis. Instead, Brown need only provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). She has done that by alleging that she was discharged shortly after informing her employer that she was continuing to suffer from a severe, symptomatic case of COVID-19. *See Matias v. Terrapin House, Inc.*, No. 5:21-CV-02288, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) ("[T]he immediate temporal proximity between [the employee's] disclosure of her COVID-19 symptoms . . . and her termination raises a strong inference that [the employer] regarded her as disabled."). In short, the Defendants' arguments for dismissal are premature and their Motion is due to be denied.

## V.   CONCLUSION

Accordingly, it is ORDERED as follows:

(1) The Defendants' Rule 12(b)(6) Motion to Dismiss (Doc. 16) is DENIED.

(2) The parties shall file a report of their planning meeting on or by March 8, 2022.

DONE, on this the 22nd day of February 2022.

                                                            /s/ R. Austin Huffaker, Jr.
                                                  R. AUSTIN HUFFAKER, JR.
                                                  UNITED STATES DISTRICT JUDGE

---

rights-covid19/guidance-long-covid-disability/index.html.  Brown may very well be a long-hauler, or she may be something much less.  Either way, this is a fact-driven inquiry that is not appropriate for resolution at this stage.